IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYED WAHID,<br><br>        Plaintiff,<br><br>v.<br><br>GOODWILL INDUSTRIES INTERNATIONAL, INC.,<br><br>        Defendant. | Case No.<br><br>FILED: APRIL 22, 2008<br>08CV2303    PH<br>JUDGE KENDALL<br>MAGISTRATE JUDGE COLE |

NOW COMES Plaintiff, SYED WAHID ("Plaintiff"), by and through undersigned counsel, and complains of Defendant GOODWILL INDUSTRIES INTERNATIONAL, INCORPORATED ("Defendant") as follows:

## INTRODUCTION

1. Plaintiff seeks redress for religion, national origin, and ancestry discrimination and retaliation. This case is brought for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and pursuant to 42 U.S.C. § 1981, as amended.

## PARTIES

2. Plaintiff is a Muslim man originally from Pakistan who resides at 6318 N. Kedzie, in the city of Chicago, in the county of Cook, in the state of Illinois.

3. Defendant is a corporation doing business in Chicago, Illinois, with its principal place of business at 15810 Indianola Drive, in the city of Rockville, in the county of Montgomery, in the state of Maryland.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this case pursuant to 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. §§ 2000e, et seq., and 28 U.S.C. §§1331 and 1343.

5. This action properly lies in this district pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and/or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

6. On April 3, 2007, Plaintiff timely filed a Charge of Discrimination (Charge Number 440-2007-04266) with the Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge of Discrimination is attached hereto as Exhibit A.

7. On or about January 23, 2008, Plaintiff received his Notice of Right to Sue from the EEOC for Charge 440-2007-04266. A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

## COMMON ALLEGATIONS

8. Plaintiff worked for Defendants from November 3, 2005, until approximately July 24, 2006, as an associate.

9. Plaintiff received above average performance reviews from his supervisors.

10. On or about November 3, 2005, Plaintiff encountered a co-worker whose name, on information and belief, is Sheddi. Plaintiff was in the washroom when Sheddi entered and aggressively demanded to know who the Plaintiff was.

11. Throughout Plaintiff's employment, Sheddi was very abusive to Plaintiff. On more than one occasion Sheddi would tell Plaintiff to "go away" when Plaintiff was working.

12. Plaintiff complained multiple times to his supervisor, Sabrina, about Sheddi's behavior towards Plaintiff. Sabrina explained that Sheddi was often hostile towards his co-workers. Sabrina began giving Plaintiff and Sheddi different work assignments so that they would not have to work in close proximity.

13. On or about June, 2006, Plaintiff was in a stall in the washroom when he noticed that someone else had come into the washroom and was standing right outside his stall. Through the cracks in the stall's door Plaintiff could see that his supervisor, Mike Herring, was staring in the stall at Plaintiff. Plaintiff called out and said "What are you doing?" and Mr. Herring responded "Don't worry about it" and walked away.

14. At approximately the beginning of July, 2006, Sabrina approached Plaintiff and asked him if he had finished his work. When Plaintiff responded in the affirmative, Sabrina told him that he could leave early so that he could make the earlier train home. Sabrina told another supervisor, Mr. Herring, that she was sending Plaintiff home early and Mike objected and said Plaintiff had to stay. Mr. Herring did not give a reason for his decision.

15. Plaintiff met with Nicole Smith, from Human Resources to complain that Mr. Herring was treating him differently than similarly situated non-Muslim co-workers. Ms. Smith told Plaintiff that she would set up a meeting on the following Monday between Plaintiff, Mr. Herring and the manager, Sherry Chase.

16. On the following Monday, Plaintiff came to work and asked Ms. Chase what time the meeting was scheduled for. Ms. Chase responded by yelling at Plaintiff that there would be no meeting.

17. On July 19, 2006, Plaintiff's supervisor, Jaime Martinez, noticed that Plaintiff was in pain due to a chronic back condition. Mr. Martinez asked Plaintiff if he wanted to take a break to rest his back which Plaintiff agreed to.

18. During the break, Plaintiff was sitting at a table when Sheddi came in the room with a dustbin and broom to sweep. Sheddi yelled at Plaintiff' to "get back to work" even though Sheddi is not a manager. Plaintiff ignored Sheddi. Sheddi then hit Plaintiff in the arm with the dustbin. Plaintiff stood up and put his hands out to block Sheddi from hitting him again however he did not touch Sheddi.

19. Sheddi then began to kick Plaintiff in the both legs causing red welts. Plaintiff picked up a half full bag of napkins and began waving them in the air to defend himself against Sheddi's attack. Plaintiff at no time made contact with Sheddi.

20. As the Plaintiff was waving the bag of napkins, Ms. Chase walked in the room. Ms. Chase told everyone in hearing range to "write down that you saw Syed hitting Sheddi" though Plaintiff never hit Sheddi nor was he the one who started the fight.

21. Ms. Chase told both Plaintiff and Sheddi to write down their version of events explaining what happened. Ms. Chase was aware that English is a second language for Plaintiff and he has trouble writing in English.

22. Ms. Chase then took Sheddi in her office along with Jennifer, another supervisor. Jennifer and Ms. Chase spoke with Sheddi for close to a half an hour.

23. Sheddi left the office and Ms. Chase called Plaintiff in. Ms. Chase immediately asked Plaintiff "What country are you from?" Plaintiff responded that he was from Pakistan.

24. Jennifer asked Plaintiff "What happened?" Plaintiff tried to explain that Sheddi had attacked him and pulled up his pant leg to show the red welts on his legs. Jennifer responded by saying that Plaintiff had started the fight. Plaintiff denied starting the fight but was not given a chance to fully explain what had happened.

25. On information and belief, no effort was made to check the security camera tapes which Plaintiff which would confirm Plaintiff's version of events.

26. Ms. Chase then told Plaintiff that they were sending him home for the day. Ms. Chase also said they would do an investigation and send a letter to Plaintiff explaining what would happen next.

27. Mr. Herring, who heard the exchange between Plaintiff and Ms. Chase, laughed at Plaintiff as he was leaving and said "Go home now and rest".

28. Several months later, Plaintiff received a letter from Defendant terminating his employment. On information and belief, Sheddi is still currently employed by Defendants.

## COUNT I
### (Title VII – Race, Color, Religion, and National Origin Discrimination and Harassment, and Retaliation

29. Paragraphs 1-28 are restated herein.

30. Defendant intentionally discriminated against Plaintiff on the basis of race, color, religion, and national origin, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

31. Defendant failed to prevent or correct harassment and discrimination against Plaintiff on the basis of race, color, religion, and national origin, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

32. Defendant's policies, actions, and omissions caused Plaintiff to suffer a hostile work environment, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

33. Defendant retaliated against Plaintiff for complaining of discrimination or harassment, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

34. Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

    a. All wages and benefits he would have received but for the discrimination and retaliation;

    b. A position with Defendant with seniority or, in the alternative, front pay;

    c. Compensatory damages;

    d. Punitive damages;

    e. Attorney's fees and costs; and

    f. Such other relief as law and justice allow.

## COUNT II
### (Section 1981 – Race and Ancestry Discrimination and Retaliation)

35. Paragraphs 1-28 are restated herein.

36. Defendant intentionally discriminated against Plaintiff on the basis of race and ancestry in violation of 42 U.S.C. § 1981, as amended.

37. Defendant, in violation of 42 U.S.C. § 1981, as amended, retaliated against Plaintiff for complaining of discrimination on the basis of race and ancestry.

38. Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

> g. All wages and benefits he would have received but for the discrimination and retaliation;
>
> h. A position with Defendant with seniority or, in the alternative, front pay;
>
> i. Compensatory damages;
>
> j. Punitive damages;
>
> k. Attorney's fees and costs; and
>
> l. Such other relief as law and justice allow.

## JURY TRIAL

39. Plaintiff demands that the case be tried by a jury.

_____

Patricia Kemling, Esq.
Attorney # 6294379
Council on American-Islamic Relations, Chicago Chapter
(CAIR-Chicago)
28 East Jackson Blvd., Suite 1410
Chicago, Illinois 60604
Ph:    312.212.1520
Fax:   312.212.1530